(176 P.3d 965)
No. 97,901

In the Matter of the Marriage of BRENDA L. ATCHISON, *Appellee,* and TRACY L. ATCHISON, *Appellant.*

Opinion filed February 8, 2008.

*Paula D. Hofaker*, of Law Office of Paula D. Hofaker, P.A., of Logan, for appellant.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, for appellee.

Before CAPLINGER, P.J., MALONE, J., and LARSON, S.J.

MALONE, J.: Tracy L. Atchison appeals the district court's order terminating shared residency, granting primary residency of the minor children to Brenda L. Atchison, and ordering Tracy to pay child support with a 15% parenting time adjustment. Tracy raises three issues on appeal: (1) the district court erred when it modified child support without a material change in circumstances; (2) the district court erroneously applied the Kansas Child Support Guidelines (Guidelines) regarding shared residency; and (3) the district court erred by finding that 15% was the maximum parenting time adjustment it could apply to Tracy's child support obligation.

Brenda and Tracy were divorced on April 14, 2005. There were three minor children of the marriage. In a separate order filed on April 21, 2005, the district court approved a shared residency arrangement, finding that Brenda and Tracy regularly shared the residency of the children on an equal or nearly equal basis. The district court ordered Brenda and Tracy to share the direct ex-

penses set forth in the parenting plan on an equal basis. The district court further instructed the parties as follows:

"In order to accomplish the required sharing, which will be on an equal basis, each party is required to submit a schedule of direct expenses paid during the previous calendar month. That schedule must particularly identify the expenditure to be shared, the amount of the expenditure, the date the services were incurred or goods purchased, the date payment was made and the payee. That schedule must be presented before the 10th day of each month. . . . On or before the 23rd day of each month, reimbursement should be made by each party to the other."

After application of the shared residency rule, Tracy was ordered to pay Brenda $93 per month child support in addition to the equal sharing of expenses.

On August 16, 2006, Brenda filed a motion to modify child support. In the motion, Brenda alleged that she had the children two-thirds of the time and that she was burdened with a disproportionate share of the children's expenses. On October 19, 2006, the district court held a hearing on the matter. Brenda testified that under the parenting schedule, Tracy was supposed to have the children 43% of the time. However, Brenda testified that because of work conflicts and trips out of town, Tracy did not actually have the children for all of his allotted time. According to Brenda's records, after subtracting the time the children spent in school, the children were with Tracy only 32% of the time.

Brenda further testified that Tracy was not sharing the direct expenses as required by the district court's order. Brenda testified that even though she had kept a record of her expenses and had submitted an expense sheet to Tracy for every month from May 2005 through August 2006, Tracy had failed to submit an expense sheet to her since March 2006. According to Brenda, she provided receipts of her expenditures to Tracy, but Tracy rarely provided receipts to Brenda. Brenda testified that Tracy would never meet with her to reconcile expenses, and there was 1 month that Tracy had asked to see Brenda's expense sheet before he could decide what information to include on his expense sheet. According to Brenda, Tracy sometimes reimbursed her for expenses by having one of the children bring her a check. Brenda testified that she

and Tracy argued as much now as when they were married, and she indicated that the shared residency arrangement had been a source of tension and stress between the parties since the divorce was granted.

Tracy testified at the hearing as well. He testified that he usually picked up the children from school every day and cared for them until Brenda got off work at 6 p.m., except for the oldest child when she was participating in sports. Tracy testified that he provided for the children's direct expenses, but he acknowledged that he did not always turn in a record of the expenses to Brenda.

At the conclusion of the hearing, the district court terminated the shared residency order and granted primary residency of the children to Brenda. The district court found that a "degree of enmity exists between the parties that make[s] it difficult, if not impossible, for them to effectively communicate in a manner that might facilitate an order of shared custody." The district court specifically found that there had been no mutual sharing of direct expenses on a monthly basis since March 2006, and that Brenda had been "bankrolling the direct expenses." Although the district court found that Tracy had not been accounting for his share of the expenses, the district court acknowledged that Tracy "spends significant periods of time parenting his minor children." Accordingly, the district court ordered Tracy to pay child support pursuant to the Guidelines but granted Tracy a 15% parenting time adjustment, resulting in a monthly child support obligation of $905. Tracy timely appeals.

### Material change in circumstances

On appeal, Tracy claims that the district court erred by modifying the child support order without a material change in circumstances as required by K.S.A. 2006 Supp. 60-1610(a)(1). Brenda argues that Tracy has failed to preserve this issue for appeal.

A party who fails to raise the issue of a material change in circumstances in district court is precluded from arguing the issue on appeal. *State ex rel. Dix v. Plank*, 14 Kan. App. 2d 12, 14, 780 P.2d 171 (1989). Here, Tracy did not file a response to Brenda's motion to modify child support, nor did Tracy raise the issue of whether

there had been a material change in circumstances at the hearing in district court. Thus, Tracy has failed to properly preserve this issue for appeal. In any event, it appears there was a material change in circumstances to justify modification of child support, based upon Tracy's failure to account for expenses and based upon the tension and stress between the parties caused by the shared residency order.

### Shared residency

Next, Tracy contends that the district court erroneously applied the Guidelines regarding shared residency. Tracy maintains that he and Brenda have the children for equal or nearly equal amounts of time, and the district court erred in terminating the shared residency order.

The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion. However, interpretation and application of the Guidelines is subject to unlimited review. *In re Marriage of Cox*, 36 Kan. App. 2d 550, 553, 143 P.3d 677 (2006). Furthermore, an appellate court reviews the district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. An appellate court has unlimited review of conclusions of law. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007). Finally, an appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. 283 Kan. at 19.

We begin by noting that the Guidelines have been revised since Brenda's motion to modify child support was decided by the district court. See Guidelines (2007 Kan. Ct. R. Annot. 107) (revised Guidelines). However, the revised Guidelines became effective on January 1, 2008, and were not in effect at the time the district court considered Brenda's motion to modify child support.

At the time the district court considered Brenda's motion to modify child support, the Guidelines provision regarding shared residency provided:

"Shared residency is the regular sharing of residential custody on an equal or nearly equal basis. To qualify for shared residency treatment, two components must exist. First, the blocks of time must be regular and equal or nearly equal rather than equal based on a nonprimary residency extended parenting time basis (i.e., summer visitation, holidays, etc.). Second, the parties must be sharing direct expenses of the child on an equal or nearly equal basis. Direct expenses include, but are not limited to, clothing and education expenses, but do not include food, transportation, housing or utilities.

"No shared residency treatment shall be ordered without the court having approved a plan for paying and sharing expenses. The court shall require that a detailed expense sharing payment plan be submitted by the party or parties requesting the shared residency treatment. Failure to adhere to the expense sharing plan may result in sanctions including, but not limited to, imposition of full child support and/or an order for payment of specific expenses." Guidelines § III.B.7. (2006 Kan. Ct. R. Annot. 111-12).

Tracy's primary argument is that he and Brenda have the children for equal or nearly equal amounts of time and, thus, the district court erred in terminating the shared residency order. According to Tracy's calculations, he has the two youngest children 66.25 hours per week, Brenda has them 64.5 hours per week, and they are in school the remainder of the time. Tracy asserts he has the oldest child 57.5 hours per week, Brenda has her 64.5 hours per week, and she is in school or extracurricular activities the remainder of the time. By averaging the time spent with the children, Tracy concludes that he has the children 49.5% of their out-of-school time and Brenda has them 50.5% of the time.

Tracy's argument ignores the fact that the district court terminated the shared residency order based on its findings that there had been no mutual sharing of direct expenses and that Tracy had failed to account for his payment of expenses as ordered by the court. The district court did not need to reach the issue of whether Brenda and Tracy spent equal or nearly equal time with the children because Tracy had failed to comply with the sharing of direct expenses component of the court's order. Without both shared time and shared expenses, a shared residency arrangement cannot succeed. *In re Marriage of Karst,* 29 Kan. App. 2d 1000, 1002, 34 P.3d 1131 (2001); Guidelines § III.B.7. (2006 Kan. Ct. R. Annot. 111-12).

Tracy acknowledges that he may have neglected to adhere fully with the letter of the district court's order concerning sharing of direct expenses. However, he argues that he complied with the "spirit" of the order because he paid substantial expenses for the children without ever requesting reimbursement. Nevertheless, the shared residency order directed the parties to keep records of their expenses and to exchange monthly expense sheets by the 10th day of each month. The evidence is undisputed that Tracy failed to comply with these requirements of the shared residency order.

One of the remedies available to the district court when one of the parties has failed to adhere to the shared residency order, as Tracy admitted to doing here, is the imposition of full child support. That is the option exercised by the district court in this case. The plain language of the shared residency section of the Guidelines supports the district court's action: "[f]ailure to adhere to the expense sharing plan may result in sanctions including, but not limited to, imposition of full child support and/or an order for payment of specific expenses." Guidelines § III.B.7. (2006 Kan. Ct. R. Annot. 111-12). It is clear that the district court acted within the Guidelines in terminating the shared residency order.

Although the revised Guidelines were not in effect when the district court considered Brenda's motion, we note that the revised Guidelines caution parties against using a shared expense formula. The revised Guidelines recommend a parenting time adjustment rather than the use of a shared expense formula when parents share the children's time equally or nearly equally. According to the revised Guidelines:

"Sharing expenses and using the formula should only be attempted by parents who communicate well, who are highly cooperative co-parents, who have the ability and willingness to keep accurate records for the period of time necessary to raise their children, who will timely share the children's direct expenses, who have similar values and tastes, who have considered the current and future needs of their children carefully, and who are willing and able to resolve minor problems without the intervention of others." Guidelines § III.B.7. (2007 Kan. Ct. R. Annot. 114).

This case provides a good example of why the revised Guidelines caution parties against using a shared expense formula. Such a par-

enting plan will only succeed with the most highly motivated parents, and it did not work here for the Atchisons. The district court's findings that Tracy failed to comply with the shared expense order and that he failed to account for his share of the direct expenses were supported by substantial competent evidence, and the district court did not erroneously apply the Guidelines regarding shared residency. Therefore, the district court did not err in terminating the shared residency order.

### Parenting time adjustment

Finally, Tracy argues that the district court erred by finding that 15% was the maximum parenting time adjustment it could apply to Tracy's child support obligation. As previously stated, the standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion. However, interpretation and application of the Guidelines is subject to unlimited review. *In re Marriage of Cox*, 36 Kan. App. 2d at 553.

Child support adjustments are discretionary with the court, and the party seeking the adjustment has the burden of proof to show that an adjustment should apply. Guidelines § IV.E. (2006 Kan. Ct. R. Annot. 117). The Guidelines provide for a parenting time adjustment in favor of the parent not having primary residency of the child depending on the amount of time the child spends with the nonresidential parent. Section IV.E.2.a. of the Guidelines in effect when the district court considered Brenda's motion provided:

"If the child spends 35% or more of the child's time with the parent not having primary residency and the court does not find that it is a shared residential situation as defined in III.B.7, the court shall determine whether an adjustment in child support is appropriate. In calculating the parenting time adjustment, the child's time at school or in day care shall not be considered. To assist the court, the following table *may* be used to calculate the amount of parenting time adjustment." (Emphasis added.) (2006 Kan. Ct. R. Annot. 119).

The revised Guidelines have expanded the application of the parenting time adjustment, but the language for the adjustment the district court granted to Tracy has remained the same. See

Guidelines § IV.E.2.b. (2007 Kan. Ct. R. Annot. 122). The table referred to in the Guidelines specifies a 5% parenting time adjustment when the child's percentage of time with the nonresidential parent is 35% to 39%; a 10% parenting time adjustment when the child's percentage of time with the nonresidential parent is 40% to 44%; and a 15% parenting time adjustment when the child's percentage of time with the nonresidential parent is 45% to 49%. (2006 Kan. Ct. R. Annot. 119). See 1 Practitioner's Guide to Kansas Family Law § 5.38 (Leben ed. 2004) (explaining how to calculate a parenting time adjustment).

As previously discussed, the district court terminated the shared residency order because Tracy had failed to account for his share of direct expenses, not because Tracy failed to spend an equal or nearly equal amount of time with the children. In fact, in the journal entry modifying child support, the district court specifically found that the children spent 45% of their time with Tracy. Brenda has not appealed this finding, and in any event, we conclude the finding was supported by substantial competent evidence. Based on this finding, the district court allowed a parenting time adjustment of 15% on Tracy's child support obligation.

Tracy argues that because Guidelines § IV.E.2.a. permits rather than directs the district court to use the parenting time adjustment table, the district court was not limited to a 15% maximum parenting time adjustment in Tracy's situation. Tracy asserts the district court should have considered other factors in determining the parenting time adjustment. Tracy does not indicate what parenting time adjustment would have been more appropriate, but he simply argues that the district court was not bound by a 15% maximum.

As a general rule, use of the Guidelines is mandatory and failure to follow the Guidelines is considered reversible error. Any deviation from the amount of child support determined by the use of the Guidelines must be justified by written findings in the journal entry. Failure to justify deviations by written findings constitutes reversible error. *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998).

Here, it is clear from the record that the district court concluded that 15% was the maximum parenting time adjustment it was per-

mitted to give Tracy. In the journal entry modifying child support, the district court found that the "children spend 45% of their time with the parent not having primary residence [Tracy], thus allowing this Court to make a *maximum* parenting time adjustment of 15%." (Emphasis added.) Also in the journal entry, the district court cited *In re Marriage of Cox*, 36 Kan. App. 2d at 553, and stated "use of the child support guidelines is mandatory, and failure to follow the guidelines is reversible error." However, the district court did not quote the part of the opinion that indicates the court may deviate from the Guidelines provided the deviation is explained in the journal entry.

At the hearing to stay the judgment, the district court asked if Tracy had any authority for the district court to award a higher parenting time adjustment:

"The Court: But do you agree that the guidelines say I'm not to give more than the 15 percent if I determine that the sharing is between, I think it's, 40 and 45 percent?

"[Tracy's counsel]: I don't agree because I think that's all still discretionary down there. I think that's how Your Honor read it, that you have to do it that way, and what I'm saying is I think it's discretionary."

The district court indicated a belief that it must "follow the guidelines, period." Because Tracy could not cite a specific appellate decision authorizing more than an a 15% parenting time adjustment, the district court concluded that it was bound by the Guidelines in allowing a 15% maximum.

As Tracy pointed out to the district court, § IV.E.2.a. of the Guidelines provides that a court *may* use the table provided in the Guidelines to calculate the amount of the parenting time adjustment. However, the court is not required to do so. Although the maximum parenting time adjustment permitted in the table is 15%, there is discretion built into the Guidelines for the court to consider a different amount. See *In re Marriage of Cox*, 36 Kan. App. 2d at 554 (although business depreciation expense is addressed in the Guidelines, the Guidelines leave room for judicial discretion in determining whether depreciation should be deducted as a reasonable business expense).

Furthermore, a court may always deviate from the Guidelines provided that such deviation is justified by written findings in the journal entry. Although the Guidelines table recommends a 15% parenting time adjustment for someone in Tracy's situation, a court may deviate from this figure provided that such deviation is justified in writing. Here, the district court indicated that it was required to grant Tracy only a 15% parenting time adjustment, and the district court did not seem to be aware that it could deviate from the Guidelines provided that the deviation was justified by written findings in the journal entry. As a result, the district court failed to properly exercise its discretion in determining the appropriate parenting time adjustment to award to Tracy.

We do not know from the record how much of a parenting time adjustment the district court would have allowed had the court exercised greater discretion. It is very possible that the district court may consider a 15% parenting time adjustment for Tracy to be appropriate under the facts and circumstances of this case. Nevertheless, we conclude the case must be remanded to allow the district court to reconsider the parenting time adjustment and to exercise its discretion on this issue as permitted under the Guidelines.

Affirmed in part, reversed in part, and remanded with directions.