NOT DESIGNATED FOR PUBLICATION

No. 113,512

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

RICHARD FRIARS,
*Appellant*,

and

JESSICA FRIARS, n/k/a BRUCH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed May 6, 2016. Affirmed.

*Kyle P. Sollars* and *Douglas C. Cranmer*, of Stinson, Lasswell, & Wilson, L.C., of Wichita, for appellant.

*Shawnah K. Corcoran*, of Hutchinson, for appellee.

Before ATCHESON, P.J., BRUNS, J., and WALKER, S.J.

*Per Curiam*: Richard Friars appeals from the district court's order denying his motion to modify his child support obligations. Richard contends the district court failed to set forth sufficient findings of fact and conclusions of law, failed to account for his reasonable business expenses in determining his income, and failed to give him a parenting time adjustment on his child support calculations. Since we find these claims lack merit, the district court's orders are affirmed.

1

This is the second time in 2 years this case has come before us on similar issues. A prior panel of this court considered Richard's appeal from child support orders issued by the district court. As we will describe later, that panel reversed the district court's ruling because of inadequate findings and remanded for additional findings of fact and conclusions of law. *In re Marriage of Friars and Bruch*, No. 109,411, 2014 WL 113461 (Kan. App. 2014) (unpublished opinion). We are once again plagued with similar problems in this appeal.

The parties are familiar with the history of this case, and we need not repeat it here in great detail. Instead, we will focus primarily on those events which have occurred since the prior remand.

Richard and Jessica Bruch (f/n/a Jessica Friars) were married in January 2003. Almost 2 years later, Richard filed for divorce. The couple had one child, then 18-month-old Levi. In June 2005, the parties reached a settlement agreement addressing both property issues as well as parenting time and child support. Under the agreement, the parents would share joint legal custody of their child with Jessica being designated as the primary residential custodian. Richard also agreed to pay $350 per month in child support. A detailed parenting time schedule was set out in the agreement. The court adopted these agreements at the time the divorce was granted.

In May 2011, Jessica filed a motion to modify child support. Jessica sought the modification because the child's age—Levi had turned 7 years old—called for an increase of support under the state's child support guidelines. Ultimately, the parties agreed to a modified child support amount of $533 per month beginning July 1, 2011, which was approved by the district court.

In November 2012, Jessica filed a second motion to modify child support asserting that Richard's income had substantially increased and he had failed to respond to a written request for income information as required by the guidelines. After the district court ordered financial records to be exchanged, a hearing on the motion was held. Jessica argued that Richard had made $3,200 per week during a 6-month period in 2012, but he then had voluntarily quit his job. She asked the court to impute that income to him and increase support from $533 to $1,595 per month.

Richard responded to Jessica's motion by arguing that his welding employment was seasonal, and he received unemployment benefits from the union for part of the time he was not working. Richard asked the district court to consider historical information about his income and expenses, noting that the average income he received over the last 4 years was $96,852. Although he received some reimbursement for travel expenses from his employer, Richard explained he was responsible for any expenses over the contractual reimbursement rate. He claimed he had approximately $36,000 in unreimbursed business expenses every year, reducing his pretax income to $60,852.

Following the hearing, the district court issued an order drafted by Jessica's counsel finding that Richard's annual income was $127,722 per year and that Jessica would be imputed to earn minimum wage. Based on an attached child support worksheet, Richard was ordered to pay $1,317 per month in child support. Richard appealed from this ruling, objecting to the district court's calculations and contending he had been deprived of due process of law by the court.

As noted above, the prior panel of this court rejected Richard's due process claim but concluded the district court's finding that he should be imputed income of $127,722 was not supported by sufficient evidence in light of the court's sparse findings. The panel remanded the case for further findings of fact and conclusions of law to support its

reasoning or for the recalculation of Richard's child support. *In re Marriage of Friars and Bruch*, 2014 WL 113461, at *7.

Following remand, the district court held a hearing in March 2014. After considering all of Richard's wages and reimbursements, and imputing 7 weeks of additional voluntary unemployment, the court found Richard's wages were $84,690 in 2012. The court rejected Richard's claims that his reasonable business expenses exceeded the per diem and reimbursements he obtained from his employers and disallowed reductions of his income based upon other claimed expenses. This resulted in a child support order of $1,015 per month effective January 1, 2013. Significantly, no appeal was taken from this order.

The events leading to this second appeal began shortly thereafter, as antagonism between the parties spilled onto the district court's docket. Jessica filed a motion to hold Richard in contempt for failing to pay the ordered support and asserting he was in arrears in excess of $11,000. She also requested a restraining order based upon her assertion that Richard had harassed her by issuing a subpoena for records for the child's therapist and conducting video surveillance of her home. Jessica claimed that she, her friends, and family, felt threatened by the actions of Richard's and his agents.

After a hearing on Jessica's motion, the district court found Richard in indirect contempt of court for failing to pay child support as ordered. The court awarded Jessica $150 in attorney fees. While the judge denied Jessica's request for a restraining order, she admonished both parties to behave appropriately in the future. Both parties were ordered to provide current income and employment records, and a further hearing was scheduled during July 2014 to review Richard's payment record and consider the status of the contempt order.

In July 2014, the Kansas Department of Children and Families (DCF) entered an appearance as assignee of Jessica's child support rights. DCF requested the district court to modify an existing income withholding order to withhold the $1,015 current child support required, plus $100 per month to pay toward an outstanding arrearage of nearly $15,000. An income withholding order was issued thereafter.

In August 2014, Richard filed a motion to modify his child support obligation. He asserted that he had a new job located in or near Reno County which was more conducive to his parenting schedule. In addition, he asserted that he was no longer incurring work-related expenses. Based upon his new domestic relations affidavit, Richard reported that he was earning $31,176 annually. Richard also requested a parenting time adjustment and an income tax adjustment under the child support guidelines.

After Richard retained different counsel, he filed an additional request that the judgment for the child support arrearages be set aside under K.S.A. 60-260(b)(6). No additional information was provided in the motion as to the factual grounds for the K.S.A. 60-260 request, and the motion to set aside was not discussed at the next hearing. A new domestic relations affidavit reported Richard's income was $2,560 per month.

At the hearing on his motion, which was held before a different district court judge than previous child support hearings, Richard described the patchwork quilt of his employment arrangements since the divorce. He testified that he had worked as a welder for the last 10 years and was sometimes self-employed and sometimes employed by a company. At the time of the hearing, Richard was working as a laborer and part-time welder for Frank Construction and was working locally. Prior to this job, he was a self-employed subcontractor on a job working as a welder on a gas pipeline in Independence, Kansas. When he was self-employed he was required to provide his own truck, welding equipment, and oxygen acetylene. He was paid wages, rig expenses (that related to equipment expenses), and an hourly wage; however, he had to pay his own expenses such

5

as fuel, wear and tear on his equipment and truck, equipment to move the welding machines, and special fire-retardant clothing. Richard testified that his average *unreimbursed* expenses when working a job as a self-employed welder was $3,000 to $5,000 per month if he worked in Texas or Oklahoma and higher if he worked further north. Richard also testified that he generally was only able to work 8 months out of the year due to union rules. His union contract precluded him from doing other welding projects involving pipes. Richard further testified that although he was scheduled for 48 percent parenting time, he usually maintained at least 35 percent parenting time. Richard admitted he constantly worked multiple jobs every year and that some of his wage statements from contracts reflected that he brought home $26,000 to $32,000 per month, including wages, rig pay, and per diem. His records also showed he received per diem for an average of 245 days in 2012 and 2013.

The district court took the matter under advisement with Richard agreeing to present a statement from his accountant within 30 days. There is significant confusion as to what happened thereafter. The appearance docket and record fail to reflect any written ruling from the court, yet Richard filed a motion to reconsider the court's ruling. In his brief, he contends the judge issued a ruling via e-mail. Richard's motion alleged that the court failed to properly consider his reasonable business expenses and failed to grant him a parenting time adjustment. Apparently another hearing was held on January 30, 2015, after which the judge denied the motion for reconsideration. Richard filed a timely notice of appeal from the "[o]rder filed February 5, 2015."

ANALYSIS

On appeal, Richard first challenges the district court's order denying his motion to modify on the grounds that it lacks sufficient findings of fact and conclusions of law and fails to adequately analyze the Kansas Child Support Guidelines (KCSG) with respect to the case. Richard correctly noted that K.S.A. 2015 Supp. 60-252(a) obligates the district

6

court to make findings of fact and conclusions of law in contested matters. See also Supreme Court Rule 165 (2015 Kan. Ct. R. Annot. 257).

Richard's argument faces two hurdles, however. First, he failed to file a motion seeking additional findings of fact and conclusions of law from the district court prior to filing and perfecting this appeal. See K.S.A. 2015 Supp. 60-252(b). As a general rule, a party must object to inadequate findings of fact and conclusions of law to preserve the issue for appeal because such objections give the district court an opportunity to correct any alleged inadequacies. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). This requirement gives the district court the opportunity to correct its orders. "'Where no objection is made, this court will presume the trial court found all facts necessary to support its judgment. However, this court may still consider a remand if the lack of specific findings precludes meaningful review. [Citations omitted.]'" *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012). The second path was the one chosen by the prior panel of this court.

Following remand from the 2013 appeal, the district court subsequently issued an order in March 2014 revising downward Richard's child support obligation and explaining its reasoning. These findings included a determination that Richard's claimed business expenses in excess of his per diem and rig fees were unreasonable. He did not appeal from this decision.

In his August 2014 motion, Richard requested a reduction in his child support payments, plus the inclusion of a parenting time adjustment and an income tax adjustment. After a hearing before a new judge, additional evidence was presented as to Richard's employment history since 2009. Richard requested that the court recalculate his child support based upon his current employment, or if basing child support on his prior income, to properly consider his reasonable business expenses. In other words, Richard

effectively asked the court to reconsider the ruling regarding business expenses from the March 2014 order which he did not appeal.

The second hurdle Richard faces in bringing this appeal is the absence of an adequate record to permit meaningful appellate review. It appears from the briefs that the district court judge issued an e-mail ruling that is not included in the record on appeal. An e-mail ruling was also the root of the problem in the prior appeal, although that panel apparently had the benefit of the e-mail included in the record. See *In re Marriage of Friars and Bruch*, 2014 WL 113461, at *7 (in e-mail to counsel, district court gave only brief explanation for its decision). In this case, an e-mail issued by a different judge again appears to have been sent but was not included in the record on appeal. Before a journal entry reflecting that ruling in the e-mail could be filed, Richard filed a motion to reconsider. Following a hearing thereafter, the court signed a very brief order denying the motion to modify.

Once again the absence of a critical record makes it difficult for us to review the propriety of the actions in the lower court. Without the district court's e-mail ruling, we are left to speculate whether the district court, in fact, made any detailed findings. When combined with Richard's failure to object to the inadequate findings, we are placed in an awkward procedural situation. As a general rule, we presume the district court found all the facts necessary to support its judgment. See *O'Brien*, 294 Kan. at 361. This is especially true since it appears from the record that Richard was primarily seeking reconsideration of a child support determination made 6 months earlier, based upon many of the same arguments raised prior to the March 2014 order.

Without having a copy of the district court's e-mail decision, we have no idea what findings were made or how the court expected them to be preserved for the record. In such situations it is imperative that the district court maintain the integrity of its records. This includes making sure that all orders, including e-mail orders, which direct counsel to

8

draft journal entries based upon a ruling are timely filed with the clerk of the court. The court needs to make sure counsel drafting such journal entries include as much information as possible from the hearing/informal order to enable a meaningful review in the event of an appeal.

We could simply stop at this point and affirm the district court's decision based upon a finding that Richard has failed to provide a record adequate to allow appellate review. But in the interest of bringing finality to these issues and forestalling a potential third appeal on similar grounds in this case, we will deal with the issues the parties raise in their briefs to the extent we are able.

In determining a parent's child support obligations, a district court's decision must be governed by statutes and the guidelines developed by our Supreme Court. See K.S.A. 2015 Supp. 23-3001 *et seq.*; KCSG, Administrative Order No. 261 (2015 Kan. Ct. R. Annot. 111). The interpretation or application of the KCSG is a question of law over which the appellate court has unlimited review. However, a district court's ultimate child support award is generally reviewed for an abuse of discretion. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). An abuse of discretion can only be found if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Fischer*, 296 Kan. at 825.

Although the parties have been litigating child support sporadically since the original 2005 divorce, the district court issued an order in March 2014 finding that, based upon Richard's historical income and what the court determined to be reasonable business expenses, child support in the amount of $1,015 was proper under the KCSG. Richard did not appeal from this order.

Instead, Richard filed a motion to modify child support 6 months later asserting his wages had decreased and his parenting time increased due to a change in his

9

employment. In seeking a modification so soon after the prior order, Richard was obligated to establish that a material change of circumstances existed. Whether a material change of circumstances is established is reviewed under the abuse of discretion standard. *In re Marriage of Schoby*, 269 Kan. 114, 120-21, 4 P.3d 604 (2000).

Here, Richard initially relied on his reduced pay and increased parenting time due to his engagement in local, nonunion work which provided a decreased salary. By the time the case proceeded to a hearing, however, Richard's local job was nearly complete. After hearing very brief testimony about his current employment, his counsel focused on his union work and work history, which involved his claim for work-related expenses beyond what he received in per diem and rig expenses under his union contract. After taking the matter under advisement, the district court issued by e-mail a notice that it was denying a motion. Before a journal entry was prepared, Richard filed a motion for reconsideration. Following another hearing, the district court again denied the motion in a brief 1-page order.

Although Richard had established a temporary change in his employment, his motion to modify largely sought to revisit the issues of his work-related expenses from his higher-paid union work that had been decided in March 2014. Thus, although Richard may have proven a temporary change in circumstances, by the time of the final order, those circumstances appeared to no longer exist. In fact, at the hearing on the motion to reconsider, there was indication that Richard was working a union job in New Mexico.

In light of the apparent temporary nature of the changes in Richard's parenting time and salary and the fact that the focus of the hearings in November 2014 and January 2015 was a rehashing of his claims relating to the work-related expense issue resolved in March 2014, Richard failed to establish a material change of circumstances. He continues to dispute the court's failure to account for his unreimbursed business expenses noted in his tax returns. As this court has noted, however, "'[t]he taxable income shown in a tax

10

return is not always a reliable indication of domestic gross income.'" *In re Marriage of Cox*, 36 Kan. App. 2d 550, 553, 143 P.3d 677 (2006) (depreciation claimed on income tax return not always indicative that depreciation was reasonably necessary for production of income).

Although the district court's verbal statements at the hearing on reconsideration focused on the best interests of the child, the record before us fails to show that Richard proved a material change in circumstances (other than for about 6 months) to justify a modification in his child support obligation. The focus of Richard's arguments below was to revisit the March 2015 ruling as to the reasonableness of his claimed business-related expenses. Richard did not appeal from the court's decision in March 2015 and cannot now be allowed to revisit that finding due to his failure to establish a material change in circumstances.

Affirmed.